**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

```
.........................................
IN RE:  USA v. MST, etc.                 *
                                         *
                                         *    Case Number: 2:18-mc-00127-NT
                                         *
.........................................
```

### MEMORANDUM OF MSSRS. HORNOF, KORDIC AND ZAK CONCERNING THEIR STANDING, OBJECTION AND PRAYER FOR JUSTICE

NOW COME Jaroslav Hornof, Damir Kordic, and Lukas Zak (the "movants") and respectfully submit this memorandum of law to address the following questions raised by the Court during its preliminary assessment of the movants' request that they be afforded victim status and that the Court protect their rights, under 18 U.S.C. §3771 and 33 USC §1908, to seek an award from any fine collected in this matter:

1. The Court may have suggested that in order to qualify as victims, the movants must have been injured as a direct result of the elements of the crime of conviction, and not of the other crimes charged or the overall scheme of MST and its unindicted chief engineer.  Although the movants would satisfy even that narrow test, controlling First Circuit precedent expressly recognizes that victim status is now available to folks who are injured by the defendant's scheme and by crimes to be dismissed as part of a plea deal.

2. Even if they did not qualify as "victims" within the meaning of the expanded victims' rights statutes, the movants would have standing to be heard under section 1908(a) and general principles of standing; and

3. Contrary to the government's response to the Court's question, the movants contend section 1908(a) would allow the Court to award them a share of the fine under the dishonest plea agreement between MST and the government; nevertheless, because honesty is always justice's best policy, the movant's respectfully submit that the Court should insist on an honest plea agreement not based on false "stipulations" and one that is not disingenuously tailored in an attempt to defeat the rights of a non-party.

The facts establishing that the movants were victims of each crime charged in the indictment and that there is no factual basis for the implicit (but unstated) assertion that MST's

obstruction of justice caused $1,600,000 in "pecuniary gain" or "pecuniary loss" are set forth in the movants' affidavits. Additional facts explaining that the dishonest plea agreement submitted to the Court was consciously designed to defeat the movants' rights are set forth in the movants' proffer.

## DISCUSSION

### I. Victim status is no longer limited to a narrow definition of the victims of only the charge of conviction.

As first enacted, the Victim Witness Protection Act was indeed interpreted by the Supreme Court as limiting relief –at least restitution – to those suffering "loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413 (1990). But as the First Circuit has explained, Congress thereafter amended that statute and enacted the Mandatory Victim Restitution Act and the Crime Victims' Rights Act to expand the definition of a victim and "enshrine[] a panoply of victims' rights." *United States v. Aguirre-Gonzalez*, 597 F.3d 46, 51 (2010). Under the amendments and new statutes, victims' rights are available "without regard to whether the conduct that harmed the victim was conduct underlying the offense of conviction." *Id.*, quoting *United States v. Acosta*, 303 F.3d 78, 86-87 (1st Cir. 2002). Victims injured by the defendant's offense that "involves as an element a scheme, a conspiracy, or a pattern of criminal activity" are expressly afforded victims' rights. *United States v. Aguirre-Gonzalez*, 597 F.3d at 50-51. Obstruction of justice is fundamentally a "scheme." The Indictment plainly charges, and MST has admitted, both a "scheme" and "pattern of criminal activity" under any reasoned interpretation of those terms.

Consistent with the expanded definition of "victims," courts regularly afford the "panoply" of victims' rights, including the right to be heard and considered in evaluating a plea agreement, to broader groups of victims. *See, e.g.*, *United States v. Stevens*, 239 F. Supp. 3d 417 (D. Ct. 2017) [rejecting plea agreement for drug distribution at request of family of person who

overdosed and criticizing government for failing to advise victim of agreement even though no "death resulting" was charged].

> **II. Even if they had not been victims of MST's criminal conduct, the movants would have standing under section 1908 to object to a dishonest agreement specifically intended to defeat their rights under that statute.**

The Act to Prevent Pollution from Ships (APPS) provides in pertinent part.

> Criminal Penalties. A person who knowingly violates the MARPOL Protocol, Annex IV to the Antarctic Protocol, this Act, or the regulations issued thereunder commits a Class D felony. ***In the discretion of the Court, an amount equal to not more than ½ of such fine may be paid to the person giving information leading to conviction.***

33 U.S.C. § 1908(a) (emphasis supplied).

Although the statute of course confers discretion on the Court, the government has acknowledged elsewhere that substantial APPS awards have become "routine" when the facts support a reward.[1] The First Circuit has explained that the entire purpose of the APPS award "is to create incentives for the whistleblower to take risks that may disadvantage the whistleblower in his relationship to his employer." *United States v. Overseas Shipholding Group, Inc.*, 625 F.3d 1, 9 (1st Cir. 2010); *see also United States v. Overseas Shipholding Group, Inc.*, 547 F. Supp. 2d 75, 86 (D. Mass. 2008), *aff'd in part and vac'd in part*, 672 F. Supp. 2d 188 (D. Mass. 2009), *aff'd in part and rev'd in part*, 625 F.3d 1, 2011 AMC 1988 (1st Cir. 2010) (purpose "is to remunerate those willing to risk their jobs by reporting violations of APPS."). It therefore encourages generous awards. *See id.* The government has expounded on this:

> Deliberate violations of MARPOL and United States law are far too common. Criminal conduct that takes place within the small community of those living and working aboard vessels is difficult to detect…. The availability of the APPS award aptly reflects the realities of life at sea and the pollution of the oceans. Because the pollution takes place in the middle of the ocean and usually at night, the only people likely to know about the conduct and the falsification of ship records used in port are the employees in the engine room…. Each year,

---

[1] *See* Government's Amended Motion for Whistleblower Awards (ECF No. 13) in *United States v. Overseas Shipholding Group, Inc.*, Cr. No. 06-CR-10408-RGL, *et al.* (D. Mass. 2007) (the "Overseas Motion").

thousands of seafarers participate in or are aware of illegal conduct aboard their vessels. A tiny minority choose to take active measure to stop the wrongdoing and bear witness. *The **government's success** in identifying the activity and obtaining sufficient evidence to support investigations and prosecutions **is dependent on the willingness of lower level crewmembers to step forward**…. A substantial monetary award both rewards the crewmember for taking that risk and may provide an incentive for fellow crew members to alert inspectors and investigators of similar conduct on other ships in the future.*[2]

Hence, the courts have consistently awarded large rewards to those who have provided evidence of MARPOL violations.[3]

Though the government typically moves for an award on behalf of the informants as part of the sentencing proceedings, the informers themselves (through counsel) have filed motions for awards under the APPS on at least a few occasions. *See Overseas Shipholding*, 547 F. Supp. 2d at 80. The movants have found no case or filing questioning informers' right to seek a just APPS reward. Moreover, even when the government initially files the motion, informers consistently have been permitted to intervene or otherwise be heard in sentencing proceedings to argue in

---

[2] Overseas Motion at 2-3 (emphasis supplied); *see also* Government's Motion for Whistleblower Award (ECF No. 5) in *United States v. Efploia Shipping Co., S.A.*, CR. No. MJG-11-0652 (D. Md. 2012) (using nearly identical language).

[3] *See, e.g., Efploia Shipping*, 2016 U.S. Dist. LEXIS 108603, *17 (D. Md. July 22, 2016) (total award of $550,000 to one crewmember); *United States v. Irika Shipping, S.A.*, Cr. No. JFM-10-0371 (ordering half of $1,000,000 in APPS fines to be shared among four crewmembers as "consistent with the manifest purpose of the statute of encouraging those with information about unlawful conduct to come forward and disclose that information to authorities"); *Overseas Shipholding*, 547 F. Supp. 2d at 77 (twelve crewmembers each awarded $437,500.00); *United States v. Irika Maritime, S.A.*, Cr. No. 06-56661-RBL (W.D. Wash. 2007) (awarding one-half of $500,000 fine to engineer); *United States v. Wallenius Ship Management Pte. Ltd.,* Docket No. 2:06-cr-00213-JAG-1 (D.N.J., Aug. 10, 2006) (awarding one-half of $5,000,000 fine to be divided among four crewmembers); *United States v. Sun Ace Shipping Co.,* Cr. No. 06-705 (D. N.J. 2006) (awarding one-half of $200,000 fine to be divided among three crewmembers); *United States v. MK Shipmanagement Co*., *Ltd*., Docket No. 2:06-cr-00307-WHW (D.N.J., Aug 7, 2006) (awarding one-half of $200,000 fine to be split between two crewmembers, $75,000 to third crewmember and $25,000 to fourth crewmember); *United States v. OMI Corporation*, Cr. No. 2:04-cr-00060-KSH (D.N.J. 2004) (awarding one-half of $4.2 million dollar fine to engineer); *United States v. Sabine Transportation*, Docket No. 1:03-cr-00063-MWB (N.D. Iowa 2004) (awarding three crewmembers one-half of $2 million fine); *United States v. Botelho Shipping Corp.*, Docket No. 3:03-cr-00506-BR (D. Ore. 2003) (awarding crewmember one-half of $550,000 fine); *United States v. Norwegian Cruise Lines* (S.D. Fla. 2002) (awarding employee $250k); *United States v. D/S Progress*, Docket No. 1:00-cr-00318 (D. Md. 2002) (awarding two employees one-half of $250,000 fine); *United States v. Holland America* (D. Alaska 1999) (awarding crewmember one-half of $1 million fine); *United States v. Crescent Ship Services* (E.D. La. 1995) (awarding employee one-half of $250,000 fine); *United States v. Regency Cruises, Inc.* (N.D. Fla. 1995) (splitting one-half of $250,000 fine between two witnesses); *United States v. Princess Cruise Lines* (S.D. Fla. 1993) (awarding passenger one-half of $500,000 fine).

favor of an award or a larger award. *See, e.g., id*. at 82-83; *Efploia Shipping*, 2016 U.S. Dist. LEXIS 108603 at *16-17; *United States v. MST Mineralien Schiffahrt Spedition und Transp. GmdH*, 2016 U.S. Dist. LEXIS 107238 at *1 (D. Minn. Aug. 12, 2016).

Those seeking an award have likewise been allowed to be heard under similar anti-pollution statutes authorizing informant awards. Thus, a congressman was allowed to petition the court to recover an informer award under the Rivers and Harbors Act. *United States v. St. Regis Paper Co.*, 328 F. Supp. 660 (W.D. Wis. 1971). That Act provides for imprisonment and/or a fine for its violation and "in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction." 33 U.S.C. § 411. Where the district court had ruled, in the absence of the informants who had reported discharges leading to the imposition of a $500,000 fine, that no part of the fine should be awarded to the claimants, the Fourth Circuit squarely held that "the guarantee of procedural due process requires that they be given the opportunity to litigate it." *Miller v. United States*, 455 F.2d 833, 834 (4th Cir. 1971). Specifically, the court held that section 411 gave the claimants the *right* to assert their claim for an award with all of the procedural safeguards guaranteed by the due process clause of the Fifth Amendment. *Id.* at 836. "Thus, claimants had a right to notice that their claim was being adjudicated, the right to confront and to cross-examine adverse witnesses, the right to participate in the proceedings by counsel and to adduce relevant, admissible evidence in their own behalf, and the right to a decision based upon evidence adduced at such a hearing." *Id. See also Overseas Shipholding*, 547 F. Supp. 2d at 89 n. 6 (*citing Miller* in APPS context).

In the past, the government (no doubt mindful of these considerations) has made a point of contacting counsel for foreign crewmembers qualifying for APPS awards and providing them with notice of sentencing proceedings.[4] The government has consistently recognized the crucial

---

[4] *See* Overseas Motion at 2 n. 1. ("The government has contacted individual defense counsel for each of these whistleblowers to provide notice of the sentencing and will provide each counsel with a copy of this pleading").

role that section 1908(a) awards play in enabling it to obtain APPS convictions and often takes the lead in advocating maximal awards to informers. The movants are in precisely the same position as all the crewmembers to whom the government has urged courts to award the highest permissible awards.

The government's Trial Brief (ECF No. 108) clearly shows that the government sought convictions under the APPS from the outset and has been relying on crucial information furnished by the movants in order to do so. The government has acknowledged that certain crewmembers of the *M/V Marguerita* may be entitled to an APPS award. *See* Motion for Conflict Counsel (August 9, 2017, filed under seal). Indeed, the efforts of the movants and of Mr. Hornof in particular have been extraordinary if not unparalleled in APPS and MARPOL history. Not only did he report the violations, he discovered the scheme, challenged the wrongdoer (chief engineer Babarovic), took samples, recorded crucial videos, insisted the pollution stop, faced down the perpetrator, ignored the perpetrator's threats, fought back when the captain and MST initially sided with Mr. Babarovic's bogus denials, and ultimately provided to officials from the Republic of Liberia and the United States of America proof positive of the misconduct, literally handing government officials (a) his videos of the misconduct, (b) the hidden pipe used in the bypass operation, and (c) detailed written statements summarizing the crimes. If less obviously heroic, Damir Kordic and Lukas Zak were also crucial. They were on the vessel far longer than Jaroslav, and without their testimony it would be impossible to prove violations before the port calls referenced in the indictment (each of which preceded Mr. Hornof's boarding). They had to admit their own participation, first to Jaroslav and then to government officials. They have both lost their jobs. Mr. Kordic's entire career and work life are almost certainly over. Not only did these witnesses provide the crucial information they

promised, they also provided testimony whenever needed or requested. The government (unfairly and falsely) assured the Court that subpoenas would not produce the witness's testimony. As a result, after being held with no process, the movants were all arrested. They were allowed to travel home only after giving grand jury and trial deposition testimony. But, as they had promised, all three movants also returned to testify at trial when requested by the government.

For over a month it was the government that mistakenly argued attorney MacColl should be disqualified because he supposedly would not purse with vigor the very award he now seeks for these worthy clients. Yet it is the government that now has gone to great lengths to deny the movants any recovery – and even their procedural rights. The government did not disclose the plea negotiations. Notwithstanding an express request from counsel for the movants, counsel for neither MST nor the government advised movants' counsel that a deal had been finally reached and a plea hearing scheduled. The movants (through their attorney) learned of that development only through the clerk's office – and only because the movants had filed their motion to protect their substantive and procedural rights. As outlined in the proffer, the plea agreement employs a false, unfounded, unexplained, and fictitious "stipulation" that a $3,200,000 fine under count nine is "appropriate" under 18 U.S.C. §3571 to try to avoid judicial scrutiny. The parties, we understand and believe, have reached a secret agreement that, if pressed by this Court, MST will agree to whatever factual explanation the government might *later* concoct to explain how MST's obstruction generated the $1,600,000 in "pecuniary gain" that would make the fine "appropriate" under the Alternative Fines Act codified at section 3571(d), and all of this dishonest was and is designed solely to defeat the movants' rights.

Even if in these extraordinary circumstances standing were not implicit in section 1908(a), general principles of standing would and do demonstrate movants' right to be heard

7

before this disingenuous plea agreement is ruled upon.  An individual has standing if he has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Merit Construction Alliance v. City of Quincy*, 759 F.3d 122, 126 (1st Cir. 2014).  The three criteria for standing are "injury in fact, causation, and redressability." *Merit Construction*, 759 F.3d at 127, *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  The first element is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; the second element is whether the alleged injury is "fairly traceable to the challenged action of the defendant"; and the third element is whether it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*; *see Cutting v. Down East Orthopedic Assocs., P.A.*, 278 F. Supp. 3d at 485, 492 (D. Me. 2017).

      The movants can satisfy all three of these elements.  First, the government is seeking, by means of the dishonest plea agreement, to invade movants' legally protected interest, which is their right under section 1908(a) to have the Court – not the government – consider whether one or more of them should be awarded up to one-half of the fine the government collects for the admitted APPS and MARPOL violations these movants disclosed *and proved*.  The possibility that the Court might make no award is irrelevant.  The movants would be sufficiently injured if (as the government contemplates) they are deprived by an official machination of the opportunity to have the Court adjudicate a motion for an award on the merits.  *Cf. Merit Construction*, 759 F.3d at 127 (contractors were injured, for standing purposes, because ordinance obstructed their "eligibility" to bid on certain projects).  The risk of injury is imminent and far from speculative. At least according to the government, if the Court approves the current plea agreement, the Court will lose any ability to grant an APPS award.  *See Kerin v. Titeflex Corp.*, 770 F.3d 978, 983 (1st

Cir. 2014) ("a small probability of a great harm may be sufficient"); *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993) (even small probability of harm is sufficient, provided "the relief sought would, if granted, reduce the probability").

Second, the imminent injury is obviously traceable to the government's action. Third, if the plea agreement is rejected, the movants will no longer face the injury caused by the dishonest agreement. The Court can redress the injury if either an honest plea agreement is presented, including express "convictions" for the admitted APPS and MARPOL violations, or if a jury returns a guilty verdict. For all of these reasons, the movants have standing to challenge this plea agreement – and would have such standing even if they were not so clearly victims of the charged offenses.

### III. If the agreement is approved and the fine paid, the Court nevertheless may and should reward the movants under section 1908.

The movants are aware of no case that has involved so blatant an attempt by the government to structure a plea agreement to defeat an informants' reward under section 1908 or any similar statute. And the movants' earnestly believe the Court should exercise its important discretion to reject the plea agreement as fundamentally dishonest and improperly designed.

They respectfully submit, however, that the section's language would allow for a reward even if the plea agreement is accepted and the fine paid under the agreement. Section 1908 declares that "a person who knowingly violates the MARPOL Protocol. . . [APPS], or the regulations issued thereunder commits a class D felony. In the discretion of the Court, an amount equal to not more than ½ of such fine may be paid to the person giving information leading to conviction." The agreed statement of fact submitted by MST and the government admit that MST, through its chief engineer and over an extended period, "knowingly violated the MARPOL Protocol, APPS [and] the regulations under APPS." The movants provided the information leading to that admission and, if the plea agreement is accepted, to the resulting

9

criminal conviction. The government not only would have no conviction, it would have no case without Mr. Hornof, Mr. Kordic and Mr. Zak.

In short, the obstruction conviction, in reality, is an APPS/MARPOL conviction by a different name. And section 1908 allows an award to an informant whenever a knowing APPS or MARPOL violation is established and a "conviction" results. Section 1908 does not expressly limit the awards to cases in which the "conviction" is expressly under the APPS or MARPOL count.

## CONCLUSION

At every turn the movants have gone above and beyond duty's call. To their substantial injury, they exposed, terminated, reported and proved MST's illegal scheme. Two of the movants have lost their jobs – and quite possibly their careers. The third, Mr. Hornof, faced down physical threats, worked tirelessly to do what was right and was unable to be with his pregnant wife during the month-and a-half following the death of her mother. All three of them were kicked off the *M/V Marguerita* by MST and left behind in this foreign country. And all of the forgoing was the direct, proximate and foreseeable result of the illegal scheme they successfully brought to justice. At the very least, they should be heard.

Respectfully submitted this 24th day of May, 2018.

        /s/ Edward S. MacColl  
Edward S. MacColl *(MBN 2658)*  
Counsel for Jaroslav Hornof, Damir Kordic and Lukas Zak

THOMPSON, MACCOLL & BASS, LLC, P.A.  
15 Monument Square, 4th Floor  
P.O. Box 447  
Portland, ME  04112-0447  
(207) 774-7600

**CERTIFICATE OF SERVICE**

     I hereby certify that on this day I have served the foregoing by filing it via the Court's ECF system, which will cause served to be made on all parties in this matter and all counsel of record in the underlying criminal matter.

                                        /s/ Edward S. MacColl
                                        Edward S. MacColl